UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HELEN JANILETH BARDALES SOSA, and J.A.B.,

Petitioners,

v. Case No: 6:26-cv-1998-JSS-CAB

ASST. FIELD DIRECTOR NORMAN S. BRADLEY, FIELD OFFICE DIRECT. GARRETT RIPA, DIRECTOR DAVID VENTURELLA, SECRETARY MARKWAYNE MULLIN, and US ATTORNEY GENERAL TODD BLANCHE,

Respondents.
________________________________/

**ORDER**

Petitioners filed an emergency motion seeking to temporarily restrain Respondents from removing them from the United States. (Dkt. 3.) For the reasons set forth below, the motion is granted in part and denied in part.

**BACKGROUND**

Petitioners are nationals of Honduras. (Dkt. 3 at 2.) Petitioners entered the United States in 2012. (*Id.* at 3.) At that time, Petitioner Helen Janileth Bardales Sosa's son, Petitioner J.A.B., was one year old. (Dkt. 1 at 2.) Two days after their arrival, the Department of Homeland Security (DHS) ordered their removal and placed them on an Order of Supervision (OSUP). (Dkt. 3 at 3; Dkt. 1-4.) According

to Petitioners, they have remained under supervision and have complied with reporting requirements imposed upon them since the date of their release. (Dkt. 3 at 3.)

Petitioners assert that on May 14, 2026, Petitioner Helen and her counsel submitted a written request notifying Respondents that Petitioner Helen feared returning to Honduras and requesting referral to an asylum officer under Immigration and Nationality Act § 235(b)(1)(A)(ii) and 8 C.F.R. § 235.3(b)(4). (Dkt. 3 at 3–4.) Petitioners state that Respondents did not refer Petitioner Helen to an asylum officer or schedule any interview with her. (*Id.* at 4.) On September 3, 2026, Petitioners attempted to submit the request again in person, but a United States Immigration and Customs Enforcement (ICE) Officer declined to discuss the request. (*Id.*)

During the September 3, 2026 meeting, the ICE Officer purportedly instructed Petitioner Helen to appear at the ICE office on September 7, 2026, with travel tickets for both Petitioners and for Petitioner Helen's two other children, who are citizens of the United States. (*Id.*) Petitioner Helen was purportedly instructed that if she did not provide the requested tickets, Petitioners and her two citizen children would be detained and removed on September 7, 2026. (*Id.*) Petitioners assert that Respondents did not provide them with any notice of revocation of their release. (*Id.*)

Petitioners now move for the issuance of a temporary restraining order (TRO), requesting several remedies, including temporarily enjoining Respondents from removing Petitioners. (Dkt. 3 at 11–13.)

## APPLICABLE STANDARDS

To obtain a TRO, the movant must sufficiently establish: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005). Immediate injunctive relief is an "extraordinary and drastic remedy, and [the movant] bears the burden of persuasion to clearly establish all four of these prerequisites." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016). Further, a court may issue temporary injunctive relief without notice to the adverse party only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

## ANALYSIS

As an initial matter, Petitioners have fulfilled the procedural requirements required to issue a temporary restraining order under Rule 65(b)(1). Petitioners have shown that immediate and irreparable injury may result before the adverse party could be heard—specifically, Petitioners could be deported to Honduras. Petitioners also sent copies of the motion to the U.S. Attorney's Office. This is sufficient under Rule 65(b)(1)(A).

Turning to the merits of the motion, Petitioners have shown a substantial likelihood of success. Petitioners allege that Respondents intend to detain and remove Petitioners on September 7, 2026, without prior notice of the reasons for revoking their OSUP. (Dkt. 1 at 23–24.) Respondents have the authority to detain noncitizens with final orders of removal to effectuate deportation. *See* 8 U.S.C. § 1231; *Zadvydas v. Davis*, 533 U.S. 678, 697 (2001). Even so, when a noncitizen is released, certain regulations govern how and when the agency may revoke that release and re-detain the noncitizen. *See* 8 C.F.R. § 241.4(l). When an OSUP is revoked under 8 C.F.R. § 241.4(l), the individual must be "notified of the reasons for revocation." *Id.* § 241.4(l)(1). After the individual is taken into custody, he or she "will be afforded an initial informal interview" to give him or her "an opportunity to respond to the reasons for revocation stated in the notification." *Id.*

The notice and informal interview requirements appear in section 241.4(l)(1) but not in section 241.4(l)(2). The petition cites to section 241.4(l)(1), but this section applies when an individual violates the condition of his or her release. 8 C.F.R. § 241.4(l)(1). Here, Petitioners' motion alleges that they have not violated any conditions of their release. (Dkt. 3 at 5.) Thus, section 241.4(l)(1) does not apply. Even so, courts have interpreted section 241.4(l)(2) as requiring an informal interview upon the revocation of release. *See Grigorian v. Bondi*, 824 F. Supp. 3d 1243, 1252 (S.D. Fla. 2025) (collecting cases and finding "it would be nonsensical if an [individual] detained for violation of conditions of release would receive notice and an interview under § 241.4(l)(1) but not § 241.4(l)(2) given that both provisions specify that a

violation of conditions of release is a basis for revoking an OSUP"); *see also United States v. Chinchilla*, 987 F.3d 1303, 1310 (11th Cir. 2021) ("In order to remove an unlawful alien subject to an order of supervision, immigration officials must first revoke the order of supervision, *see* 8 C.F.R. § 241.4(l), and must notify the alien of the reasons for revocation[.]").

Although the government has wide discretion to revoke an individual's supervised release, it is required to follow the applicable regulations in doing so. *See Gonzalez v. Reno*, 212 F.3d 1338, 1349 (11th Cir. 2000) ("Executive agencies must comply with the procedural requirements imposed by statute."); *see also Ervin David Rodas Pedro v. U.S. Immigr. & Customs Enf't*, No. 3:26-cv-798, 2026 WL 2559176, at *2 (M.D. Fla. Aug. 31, 2026) (collecting cases). However, the current record appears to show that Respondents failed to follow applicable regulations. Respondents allegedly failed to provide Petitioners any notice of the revocation of release. Although the motion submits that Petitioners are not currently detained, ICE's instruction to Petitioners suggests that they would be deported before any notice or informal interview could occur. Further, any interview that the ICE Officer conducted at the facility on September 3, 2026, may not be considered an informal interview under section 241.4(l). This is because section 241.4(l) "requires the informal interview to occur *after* the [individual] is presented with the notice and *after* the [individual] has been taken into custody." *Grigorian*, 824 F. Supp. 3d at 1254 (finding that the petitioner's routine check-in pursuant to his OSUP could not be considered the

informal interview under section 241.4(l) where he received no notice of revocation prior to the meeting).

Petitioners have likewise demonstrated irreparable injury in the absence of immediate relief. The Supreme Court addressed whether deportation is irreparable harm in *Nken v. Holder*, 556 U.S. 418 (2009). The Court held that "[a]lthough removal is a serious burden for many aliens, it is not categorically irreparable[.]" *Id.* at 435. The Court explained that individuals "who are removed may continue to pursue their petitions for review, and those who prevail can be afforded effective relief by facilitation of their return, along with restoration of the immigration status they had upon removal." *Id.* Here, neither the petition nor the motion indicates that there is any pending immigration proceeding that could make Petitioners whole if they are wrongfully deported. Thus, without interim relief to maintain the status quo, Petitioners could be deported or removed from this court's jurisdiction, effectively foreclosing any recourse. *See, e.g.*, *Zapeta v. Exec. Dir. of the Fla. Div. of Emergency Mgmt.*, No. 2:25-cv-00697-JLB-KCD, 2025 WL 2432501, at *3 (M.D. Fla. Aug. 22, 2025) (denying habeas petition as moot where petitioner had been deported because, "[a]s a general rule, a habeas petition presents a live case or controversy only when a petitioner is in custody").

Moreover, the balance of equities and public interest favors injunctive relief. As explained below, the court is only ordering that Petitioners are not removed until their habeas petition is decided. Thus, any harm to the Government is minimal. Further,

"there is a public interest in preventing [individuals] from being wrongfully removed[.]" *Nken*, 556 U.S. at 436.

The court also exercises its discretion to dispense with Rule 65(c)'s bond requirement. There is no realistic likelihood of harm to the Respondents from the relief ordered. Thus, no security is needed to ensure that Respondents will be reimbursed for "costs and damages sustained by . . . hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c); *see also Ajugwe v. Noem*, No. 8:25-cv-982, 2025 WL 1370212, at *10 (M.D. Fla. May 12, 2025).

Temporary restraining orders are meant to "preserv[e] the status quo rather than grant[] most or all of the substantive relief requested in the complaint." *Fernandez-Roque v. Smith*, 671 F.2d 426, 430 (11th Cir. 1983). The relief requested in the TRO is identical to what Petitioners seek in their underlying habeas petition. (Dkts. 1 at 27–29, 3 at 11–13.) Nevertheless, the court will temporarily enjoin Respondents from removing or attempting to remove Petitioners pending a ruling on the habeas petition. Restraining Respondents from removing Petitioners at this point mitigates the imminent irreparable harm, and any remaining relief can be addressed in the petition.

## CONCLUSION

Accordingly, it is **ORDERED** that:

1. Petitioners' emergency motion for a temporary restraining order (Dkt. 3) is **GRANTED in part** and **DENIED in part**.

2. Respondents and each of their officers, agents, servants, employees, attorneys, and all other persons who are in active concert or participation with any of them who receive actual notice of this order, are **RESTRAINED AND ENJOINED** from removing or attempting to remove Petitioners and from taking any other action to execute Petitioners' removal until further order of this court.

3. Respondents shall respond to the petition and show cause why the petition should not be granted on or before September 16, 2026.

4. The Clerk of Court is **DIRECTED** to send a copy of this order, the petition (Dkt. 1), and the TRO motion (Dkt. 3) **electronically** to the United States Attorney's Office in Orlando, Florida and by **first-class mail** to the United State Attorney General at the physical address on file with the Clerk's office.

5. The motion is otherwise **DENIED**.

**ORDERED** in Orlando, Florida, on September 10, 2026.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

USAFLM.Orlando2241@usdoj.gov