UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HELEN JANILETH BARDALES SOSA, and J.A.B.,

Petitioners,

v. Case No: 6:26-cv-1998-JSS-CAB

ASST. FIELD DIRECTOR NORMAN S. BRADLEY, FIELD OFFICE DIRECT. GARRETT RIPA, DIRECTOR DAVID VENTURELLA, SECRETARY MARKWAYNE MULLIN, and US ATTORNEY GENERAL TODD BLANCHE,

Respondents.
___________________________________/

**ORDER**

Petitioners filed a petition for writ of habeas corpus (Dkt. 1) and an emergency motion for a temporary restraining order (TRO) (Dkt. 3) on September 6, 2026. The court granted the motion for TRO in part and restrained and enjoined Respondents from removing or attempting to remove Petitioners. (Dkt. 5.) The Government responded to the petition on September 16, 2026, (Dkt. 7), and Petitioners filed a reply on September 22, 2026, (Dkt. 9). The TRO expires on September 24, 2026. *See* Fed. R. Civ. P. 65(b)(2) ("The order expires at the time after entry—not to exceed [fourteen] days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension."). For the reasons set forth below, the TRO is extended, and the court clarifies the bounds of the TRO.

## BACKGROUND

Petitioners are nationals of Honduras. (Dkt. 3 at 2.) Petitioners entered the United States in 2012. (*Id.* at 3.) At that time, Petitioner Sosa's son, Petitioner J.A.B., was one year old. (Dkt. 1 at 2.) Two days after their arrival, the Department of Homeland Security (DHS) ordered their removal and placed them on an Order of Supervision (OSUP). (Dkt. 3 at 3; Dkt. 1-4.) According to Petitioners, they have remained under supervision and have complied with reporting requirements imposed on them since the date of their release. (Dkt. 3 at 3.)

Petitioners assert that on May 14, 2026, Petitioner Sosa and her counsel submitted a written request notifying Respondents that Petitioner Sosa feared returning to Honduras and requesting referral to an asylum officer under Immigration and Nationality Act § 235(b)(1)(A)(ii) and 8 C.F.R. § 235.3(b)(4). (Dkt. 3 at 3–4.) Petitioners state that Respondents did not refer Petitioner Sosa to an asylum officer or schedule any interview with her. (*Id.* at 4.) On September 3, 2026, Petitioners attempted to submit the request again in person, but a United States Immigration and Customs Enforcement (ICE) Officer declined to discuss the request. (*Id.*)

During the September 3, 2026 meeting, the ICE Officer purportedly instructed Petitioner Sosa to appear at the ICE office on September 7, 2026, with travel tickets for both Petitioners and for Petitioner Sosa's two other children, who are citizens of the United States. (Dkt. 1 at 6.) Petitioner Sosa was purportedly instructed that if she did not provide the requested tickets, Petitioners and her two citizen children would

be detained and removed on September 7, 2026. (*Id.*) Petitioners assert that Respondents did not provide them with any notice of revocation of their release. (*Id.*)

Petitioners filed a motion for a temporary restraining order (Dkt. 3), and the court granted the motion in part after finding that Petitioners had established a substantial likelihood of success, that irreparable injury would be suffered, that the threatened injury outweighed the harm, and that the entry of relief would serve the public interest (Dkt. 5 at 3–8). The TRO restrained and enjoined Respondents from "removing or attempting to remove Petitioners and from taking any other action to execute Petitioners' removal." (*Id.* at 8.) The Government's response to the petition asserts that ICE has scheduled a credible fear interview to occur on September 30, 2026. (Dkt. 7 at 1.) According to the Government, it also intends to provide Petitioners with notice and a prompt informal interview after detaining them. (*Id.* at 7.) Yet the Government contends that the court's TRO prohibits it from detaining Petitioners, which would prevent the Government from providing the notice and interview. (*Id.* (citing 8 C.F.R. § 241.4(l)(2)). Further, the Government now alleges that the petition should be dismissed as moot or be dismissed for lack of jurisdiction. (*Id.* at 1.)

**ANALYSIS**

As an initial matter, the Government contends that Petitioners must be detained to be afforded the relief they seek. (Dkt. 7 at 7.) The applicable regulations provide: "Pending the credible fear determination by an asylum officer and any review of that determination by an immigration judge, the [noncitizen] *shall be detained*." *See* 8

C.F.R. § 235.3(b)(4)(ii) (emphasis added)); "The [noncitizen] will be afforded an initial informal interview promptly *after his or her return to Service custody* to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *see id.* § 241.4(l) (emphasis added)). The court agrees. Thus, the Government shall not interpret the TRO as preventing it from acting in accordance with the applicable rule and providing Petitioners with a credible fear interview.

The court now addresses the Government's contention that the court lacks jurisdiction. First, the Government contends that the court does not have jurisdiction over this action because Petitioners are not in custody. (Dkt. 7 at 4.) Federal courts have jurisdiction to entertain habeas petitions only from persons who are in custody. *Howard v. Warden*, 776 F.3d 772, 775 (11th Cir. 2015) (citing 28 U.S.C. § 2241). Courts construe the custody requirement very liberally and have held that a habeas petition is not restricted to situations in which the applicant is in physical custody. *Id.* Rather, "petitioners need only show that they are subject to a significant restraint on their liberty that is not shared by the general public." *Id.*

The facts in this case are akin to the facts in *Romero v. Sec'y, U.S. Dep't of Homeland Sec.*, 20 F.4th 1374, 1379 (11th Cir. 2021). The court in *Romero* found that the petitioner was in custody for the purposes of section 2241 because the conditions of her supervision were restrictive, and she was subject to a "plan of action" requiring her to depart the country or be forcibly removed. *Id.* The court held that the restraints Romero faced were not shared by the general public, and thus, she was in custody. *Id.* Here, Petitioners allege that they were placed on the intensive supervision appearance

program, ordered to wear ankle monitors, and required to appear for additional regular supervision appointments. (Dkt. 1 at 3.) Further, the petition asserts that on September 3, 2026, Petitioners were told by ICE that they would be deported on September 7, 2026. (*Id.* at 6.) Accordingly, like in *Romero*, Petitioner is in custody.

Next, the Government asserts that section 1252(g) divests this court of jurisdiction because Petitioners are challenging their final orders of removal. (Dkt. 7 at 5–6 (citing 8 U.S.C. § 1252(g)).) Section 1252(g) states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen] under this chapter." The Supreme Court has interpreted this statute narrowly, holding that the "provision applies only to three discrete actions that the Attorney General may take: [his or] her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis in original). Further, the Court refused to interpret the "arising from" language as sweeping "in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018). "Instead, [the Court] read the language to refer to just those three specific actions themselves." *Id.*

Here, Petitioners do not challenge the decision to execute their removal; they are challenging the procedural mechanics of their custody. The basis of Petitioners' claims is that the Government did not comply with the statutory requirements to

revoke an OSUP. (Dkt. 1 at 17–18.) Thus, section 1252(g) does not divest this court's jurisdiction. *See Obando-Vargas v. Assistant Dir., US DHS ICE ERO Miami Field Off.*, 832 F. Supp. 3d 1235, 1241 (M.D. Fla. 2026) (finding that § 1252 did not divest the court of jurisdiction over the petitioner's claim that the government failed to provide him with notice and an interview after revoking an order of supervision); *Huete- Alvarez v. Bondi*, No. 2:26-cv-600-KCD-NPM, 2026 WL 1097145, at *2 (M.D. Fla. Apr. 23, 2026) (same); *Grigorian v. Bondi*, 824 F. Supp. 3d 1243, 1249 (S.D. Fla. 2025) (same).

Lastly, the petition is not moot because Petitioners still have not received their informal interview and notice as required by 8 C.F.R. § 241.4(l). Additionally, the Petitioners still face the restrictions and plans of deportation that rendered them in custody for purposes of section 2241. *See Romero*, 20 F.4th at 1379 (finding that the petitioner was in custody where she was subject to deportation and restrictive supervision). Accordingly, because the petition is still pending, the court finds good cause to extend the TRO for an additional fourteen days to allow the court to consider the parties' thorough briefing. *See* Fed. R. Civ. P. 65(b)(2) (allowing court to extend expiration of TRO for good cause); *Floridians Protecting Freedom, Inc. v. Ladapo*, No. 4:24-cv-419, 2024 WL 4615743, at *1 (N.D. Fla. Oct. 29, 2024) (finding good cause where the court required additional time to review the arguments). The court will set the matter for a preliminary injunction evidentiary hearing by separate notice.

Accordingly:

1. The temporary restraining order (Dkt. 5) is extended an additional fourteen days.

2. The temporary restraining order will expire on October 8, 2026, or earlier upon order from the court.

3. As the Government has agreed, the Government shall act in accordance with 8 C.F.R. § 241.4(l) and provide Petitioners with a credible fear interview as scheduled on September 30, 2026.

**ORDERED** in Orlando, Florida, on September 24, 2026.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record