UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HELEN JANILETH BARDALES SOSA, and J.A.B.,

Petitioners,

v. Case No: 6:26-cv-1998-JSS-CAB

ASST. FIELD DIRECTOR NORMAN S. BRADLEY, FIELD OFFICE DIRECT. GARRETT RIPA, DIRECTOR DAVID VENTURELLA, SECRETARY MARKWAYNE MULLIN, and US ATTORNEY GENERAL TODD BLANCHE,

Respondents.
___________________________________/

# **ORDER**

After the court granted in part Petitioners' emergency motion for a temporary restraining order (TRO) restraining Respondents from removing or attempting to remove Petitioners, (*see* Dkt. 5), Respondents responded to the petition, (*see* Dkt. 7), and on October 7, 2026, the court held an evidentiary hearing on whether to convert the TRO to a preliminary injunction, (*see* Dkt. 17). Upon consideration, for the reasons outlined below, the court converts the TRO to a preliminary injunction.

## **BACKGROUND**

Petitioners are nationals of Honduras. (Dkt. 3 at 2.) Petitioners entered the United States in 2012. (*Id.* at 3.) At that time, Petitioner Helen Janileth Bardales Sosa's son, Petitioner J.A.B., was one year old. (Dkt. 1 at 2.) Petitioners were

encountered and detained by the U.S. Immigration and Customs Enforcement (ICE) as arriving noncitizens present in the United States who had not been admitted or paroled and were subject to expedited removal under the Immigration and Nationality Act § 235(b)(1)(A)(i). (*Id.* at 2.) In December of 2012, Petitioners were ordered removed. (Dkts. 7-1; 7-2.) Respondents did not remove Petitioners within the ninety-day removal period, 8 U.S.C. § 1231(a)(1)(A), but instead released them on an Order of Supervision (OSUP). (*See* Dkt. 1 at 3; Dkt. 1-4.) Thereafter, Petitioners fully complied with the OSUP for approximately fourteen years. (*See* Dkt. 1 at 23; Dkt. 1-4 at 6.)

On March 9, 2026, Petitioner Sosa was placed on an ankle monitor as an additional condition of her OSUP and required to appear for additional supervision appointments with the Intensive Supervision Appearance Program. (Dkt. 1 at 3; Dkt. 1-5.) On May 14, 2026, Petitioner Sosa purportedly submitted a written request notifying ICE that she feared returning to Honduras and intended to seek asylum and other fear-based protection. (Dkt. 1 at 4.) Petitioner asserts that she renewed her request again on September 3, 2026, but an ICE officer declined to discuss the request and instructed Petitioners to prepare for removal within days. (*Id.* at 5–6.)

Petitioners initiated this action on September 6, 2026, by filing a petition and an emergency motion for a TRO. (Dkts. 1, 3.) The motion for a TRO requested several remedies, including temporarily enjoining Respondents from removing Petitioners. (Dkt. 3 at 11–13.) After determining that Petitioners established a substantial likelihood of success, that irreparable injury would be suffered, that the

threatened injury outweighed the harm, and that the entry of relief would serve the public interest, the court granted Petitioner's motion and entered a TRO restraining Respondents from removing Petitioners. (Dkt. 5.)

On September 16, 2026, Respondents responded to the petition and informed the court that it had scheduled Petitioners for a credible fear interview to occur on September 30, 2026. (Dkt. 7 at 2.) Petitioners filed a reply to the response on September 22, 2026. (Dkt. 9.) The court then extended the TRO an additional fourteen days for good cause, allowing the court to consider the parties' additional briefing. (Dkt. 10 at 6.) An evidentiary hearing was scheduled on October 7, 2026, to determine whether to convert the TRO to a preliminary injunction. (Dkt. 17.)

During the hearing, Petitioners informed the court that Petitioner Sosa received a credible fear interview. The interview resulted in a negative finding, and the Petitioners requested an immigration judge to review the decision on October 1, 2026. Petitioners also asserted that 8 U.S.C. § 1225 should not be strictly applied to Petitioners because they are not arriving noncitizens. Thus, Petitioners contended that they should not be detained pending any credible fear determination.

## APPLICABLE STANDARDS

Federal Rule of Civil Procedure 65 and Local Rules 6.01 and 6.02 govern preliminary injunctive relief, which constitutes an extraordinary remedy, *see Harbourside Place, LLC v. Town of Jupiter*, 958 F.3d 1308, 1313 (11th Cir. 2020). Rule 65 requires "[e]very order granting an injunction" to "state the reasons why it issued[,] . . . state its terms specifically[,] and . . . describe in reasonable detail—and

not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). Rule 65 also states that "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." Fed. R. Civ. P. 65(c). That said, the "court has [the] discretion to waive [the security] requirement imposed by Rule 65(c)." *Disability Rts. Fla., Inc. v. Jacobs*, 473 F. Supp. 3d 1335, 1340 (M.D. Fla. 2019).

A "preliminary injunction is appropriate where the movant" satisfies four requirements: (1) the claim underlying the motion has "a substantial likelihood of success on the merits," (2) the "preliminary injunction is necessary to prevent irreparable injury," (3) "the threatened injury outweighs the harm that the . . . preliminary injunction would cause to the non-movant," and (4) the "preliminary injunction would not be averse to the public interest." *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034 (11th Cir. 2001); *accord* M.D. Fla. R. 6.01(b), 6.02(a)(1). A preliminary injunction cannot be granted "unless the movant clearly establishes the burden of persuasion as to each of the four prerequisites." *Wall v. Ctrs. For Disease Control & Prevention*, 543 F. Supp. 3d 1290, 1292 (M.D. Fla. 2021) (alteration adopted and quotations omitted).

## ANALYSIS

The court first discusses the four prerequisites for obtaining a preliminary injunction, addressing the likelihood of success on the merits and irreparable harm independently and the balance of the harms and public interest together. *See Parker*,

275 F.3d at 1034. The court then considers the security requirement for preliminary injunctive relief. *See* Fed. R. Civ. P. 65(c).

**A. Likelihood of Success on the Merits**

Petitioner has demonstrated a substantial likelihood of success on the merits to convert the TRO to a preliminary injunction. First, Petitioners are in custody for purposes of seeking habeas relief. Courts construe the custody requirement very liberally and have held that a habeas petition is not restricted to situations in which the applicant is in physical custody. *Howard v. Warden*, 776 F.3d 772, 775 (11th Cir. 2015). Rather, "petitioners need only show that they are subject to a significant restraint on their liberty that is not shared by the general public." *Id.* The facts in this case are akin to the facts in *Romero v. Sec'y, U.S. Dep't of Homeland Sec.*, 20 F.4th 1374, 1379 (11th Cir. 2021). The court in *Romero* found that the petitioner was in custody for the purposes of section 2241 because the conditions of her supervision were restrictive, and she was subject to a "plan of action" requiring her to depart the country or be forcibly removed. *Id.* The court held that the restraints petitioner faced were not shared by the general public, and thus, she was in custody. *Id.* Here, Petitioners allege that they were placed on the intensive supervision appearance program, required to report in person for additional supervision appointments, and required to report electronically every week through an ICE-designated mobile application. (Dkt. 1 at 3.) Further, Petitioners have been repeatedly informed that they face imminent

deportation. (*See id.* at 6; Dkt. 7 at 8–9 (Respondents seeking to lift the TRO to deport Petitioners to a third country).) Accordingly, like in *Romero*, Petitioner is in custody.

Further, Petitioners are now entitled to review of the officer's credible fear determination, which they have not yet received. *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(III). Petitioners have also shown that they should not be subjected to physical confinement during this time. Although Respondents asserted that ICE was executing the Petitioners' 2012 orders of final removal, Respondents agreed to schedule Petitioners for a credible fear interview under 8 U.S.C. § 1225(b)(1)(B). (*See* Dkt. 7 at 1–5.) Yet, Petitioners correctly challenge whether this statute should be strictly applied to their detention because they are no longer arriving noncitizens subject to expedited removal.

The Eleventh Circuit in *Hernandez Alvarez v. Warden, Federal Detention Center Miami*, held that "[t]he text of [section] 1225(b)(2)(A) is clear that mandatory detention applies only to a narrower category of applicants for admission: those seeking lawful entry into the United States." 175 F.4th 1258, 1276 (11th Cir. 2026). The court agreed with the petitioners that section 1225(b)(2)(A) applies to a "distinct group of [noncitizens]—those who have not yet entered the United States[] but are 'seeking admission' at the border." *Hernandez Alvarez*, 175 F.4th at 1281. In contrast, section 1226 "applies to [noncitizens] unlawfully in the interior." *Id.* at 1276. Because Petitioners have been released on OSUP for approximately fourteen years in the United States, their detention would not fall under section 1225. *See, e.g.*, *Sariz v. Woodall*, No. 3:26-cv-1735-MMH-PDB, 2026 WL 2294568, at *1 (M.D. Fla. Aug. 10, 2026) (finding that a petitioner who entered the United States in 2024 and was released

on his own recognizance was not a noncitizen seeking entry under § 1225 when he was detained in 2026). Accordingly, although Respondents provided Petitioners a credible fear interview under 8 U.S.C. § 1225(b)(1)(B), Petitioners are not subject to physical detention under the statute because they are not arriving noncitizens seeking admission at the border.

**B. Irreparable Harm**

Petitioners have likewise demonstrated irreparable injury in the absence of immediate relief. The Supreme Court addressed whether deportation is irreparable harm in *Nken v. Holder*, 556 U.S. 418 (2009). The Court held that "[a]lthough removal is a serious burden for many aliens, it is not categorically irreparable[.]" *Id.* at 435. The Court explained that individuals "who are removed may continue to pursue their petitions for review, and those who prevail can be afforded effective relief by facilitation of their return, along with restoration of the immigration status they had upon removal." *Id.* Here, nothing indicates that there is any pending immigration proceeding that could make Petitioners whole if they are wrongfully deported. Thus, without interim relief to maintain the status quo, Petitioners could be deported or removed from this court's jurisdiction, effectively foreclosing any recourse. *See, e.g.*, *Zapeta v. Exec. Dir. of the Fla. Div. of Emergency Mgmt.*, No. 2:25-cv-00697-JLB-KCD, 2025 WL 2432501, at *3 (M.D. Fla. Aug. 22, 2025) (denying habeas petition as moot where petitioner had been deported because, "[a]s a general rule, a habeas petition presents a live case or controversy only when a petitioner is in custody").

**C. Balance of the Harms and Public Interest**

Petitioners have likewise demonstrated irreparable injury in the absence of immediate relief. "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences" when they provide injunctive relief. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). During the hearing, Respondents informed the court that the immigration judge's review is typically a quick process. Under 8 C.F.R. § 1003.42(e), the immigration judge is required to "conclude the review to the maximum extent practicable within [twenty-four] hours, but in no case later than [seven] days." Thus, any potential harm Respondents face from a preliminary injunction would be limited in time and minimal. Further, "there is a public interest in preventing [individuals] from being wrongfully removed[.]" *Nken*, 556 U.S. at 436.

**D. Security**

Rule 65(c) provides that the court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Although security is typically required for preliminary injunctive relief, "the amount . . . is a matter within the discretion of the trial court, and the court may elect to require no security at all." *BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005) (alterations adopted and quotation omitted). Having considered the matter, the court exercises its discretion not to require security at this time. *See Saint*

*Remy v. Bondi*, No. 3:26-cv-28-MMH-SJH, 2026 WL 851385, at *1 (M.D. Fla. Jan. 12, 2026) ("[B]ecause there is no realistic likelihood of prejudice to [the r]espondents from the issuance of this limited restraint, the [c]ourt exercises its discretion to dispense with the requirement that [the petitioner] provide security[.]").

**CONCLUSION**

Accordingly:

1. The TRO (Dkt. 5) entered in this case on September 10, 2026, is **CONVERTED** to a preliminary injunction.
2. Respondents and those in privity with them are **PRELIMINARILY ENJOINED** from detaining, removing, or attempting to remove Petitioners.
3. Respondents shall remove the ankle monitors placed on Petitioners by the end of today, October 9, 2026.
4. The parties shall each file a status report on or before October 23, 2026, informing the court of the status of the credible fear review process and any outcomes from the process.
5. The court does not require monetary security from Petitioners for the preliminary injunction, as the court deems such security unnecessary at this time.

**ORDERED** in Orlando, Florida, on October 9, 2026.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party